### WAY et al. v. EFDIMIS.
### No. 6630.

United States Court of Appeals for the District of Columbia.

Decided June 1, 1936.

Samuel M. Boyd, Chester Gray, and Elwood Seal, all of Washington, D. C., for appellants.

James C. Wilkes and James E. Artis, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

VAN ORSDEL, Associate Justice.

Appellee, plaintiff below, brought a suit for damages for personal injuries sustained by her as the result of falling through certain trapdoors located in a walk in front of premises 1629 North Capitol street in this city. There was a verdict in plaintiff's favor, and from a judgment thereon Clara T. Way, the owner of the premises, and her codefendant, the District of Columbia, appeal.

It appears that about 7:30 p. m. on October 28, 1932, plaintiff and her sister-in-law left plaintiff's home together to look for an apartment for the sister-in-law. After looking at several apartments, the sister-in-law remarked that she had seen an advertisement in the paper of an apartment for rent in the 1600 block of North Capitol street, toward which locality they then proceeded. As they approached No. 1629 they observed a "For Rent" sign either in the window or on the front of the building. At the suggestion of the sister-in-law, in order either to read the name of the agent on the sign, or to look into the window, they then left the concrete sidewalk on which they were walking, and turned into a brick walk leading up to the front door of No. 1629 and extending to the left thereof, under the aforementioned window. The trapdoors, which were about three feet square, were located directly beneath the window and were inclosed by a stone coping, or capstone, which projected approximately three to five inches above the surface of the brick walk and formed a part thereof. The bottom of the window was about four feet eight inches above the trapdoors. While plaintiff and her sister-in-law were proceeding arm-in-arm on the brick walk toward the front of the building, they stepped on the trapdoors, which immediately gave way beneath them and precipitated them into the cellar below.

The testimony of the plaintiff and her sister-in-law was to the effect that they were not familiar with the conditions existing immediately in front of No. 1629 and that, as they walked arm-in-arm along the brick walk and stepped on the trapdoors, they did not perceive that the trapdoors were slightly elevated above the level of the walk. The trapdoors and the walk were located entirely within the street limits, on property owned by the United States and under the control of the District of Columbia.

The error assigned is the refusal of the court, at the conclusion of the evidence for the plaintiff, to instruct the jury to return a verdict for the defendants, and the further refusal of the court, at the conclusion of all the evidence, to so direct a verdict.

It is insisted by counsel for defendants that defendants are not liable to plaintiff because plaintiff was using the trapdoors for an improper use, and a use for which they were not intended. We think this contention cannot be sustained. The walk in question was part of a city sidewalk, and it was the duty of the District to keep it in a safe condition for pedestrians who might use it. It matters not that the walk was constructed and used for the benefit of the properties which it immediately adjoined, and that it was separate and apart from the main sidewalk extending along the street. It was located within what may be called the parking, which extends from the inner edge of the main sidewalk to the building line. As this court said in Dotey v. District of Columbia, 25 App.D.C. 232, 235: "The sidewalks of the city of Washington extend from the curb line bounding the carriageway of the street, to the building line of the houses. They are wholly the property of the United States, and they are wholly subject to the control of the municipal authorities of the District of Columbia. That a portion of these sidewalks should be in a measure withdrawn from the public trav-

el upon them, and set apart as parking, does not change or diminish in any manner the control of the District over them. This is a mere matter of convenience and of municipal ornamentation. * * * The paths to the houses are as much parts of the sidewalks now as they ever were. The control of the municipal authorities over them is as complete as it has ever been. The adjacent owner may not disturb that path any more than he can any other part of the sidewalk, without the consent of the municipal authorities. He may not pave it as he pleases. He may not substitute one pavement for another. He may not elevate or depress it, except with the permission of the municipal authorities. Indeed, even as to the grass plots, which actually constitute the parking, he must use them in entire subordination to the superior control of the municipality."

The walk immediately in front of the premises, and the trapdoors therein, were constructed by permission of the municipal authorities, and the duty of the District of Columbia and of the owner of the property, for whose convenience and use the trapdoors were placed in the walk, to keep them in a safe condition was imperative. It matters not if the plaintiff, in reaching the walk wherein the trapdoors were located, crossed the grass parking (as she testified on cross-examination, in contradiction to her testimony on direct examination, and the testimony of her sister-in-law), instead of using the connecting brick walk which extended back from the main sidewalk. All of this area was under the supervision and control of the District authorities; it was their duty and responsibility to see that it was kept in a safe condition for pedestrians who might use it for lawful and proper purposes; and there was evidence that the defendants had notice of the defective condition of these trapdoors.

We think there was nothing improper or out of the ordinary in the action of plaintiff and her sister-in-law if they walked across the grass parking and onto the brick walk to ascertain the name of the agent on the "For Rent" sign displayed or to look through the window to find out whether anything was revealed in the premises in respect of the sign. They were seeking an apartment and had no knowledge that the vacant room from which the window opened had ever been used as a store or a storeroom. Their curiosity did not deprive them of the right to use the walk for the purposes for which it was constructed, and inasmuch as the trapdoors were a part of the walk, it was the duty of the defendants to maintain them in a safe condition for pedestrians who might step on them in using the walk.

The judgment is affirmed, with costs.